UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        :
ADAM REED,                              :
                                        :
        Petitioner,                     :    Civ. No. 20-11523 (NLH)
                                        :
    v.                                  :    OPINION
                                        :
BRUCE DAVIS, et al.,                    :
                                        :
        Respondents.                    :
_____:

APPEARANCES:

Adam Reed
313270-C
New Jersey State Prison
PO Box 861
Trenton, NJ 08625

        *Petitioner Pro se*

Grace C. MacAulay, Camden County Prosecutor
Linda A. Shashoua, Chief, Motions and Appeals Unit
Camden County Prosecutor's Office
200 Federal Street
Camden, NJ 08103

        *Counsel for Respondents*

<u>HILLMAN</u>, District Judge

    Pro se petitioner Adam Reed, a state prisoner at New Jersey

State Prison in Trenton, New Jersey, petitions for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Reed

challenges his 2013 conviction for 15 separate offenses,

including various counts of drug possession, weapon possession,

and attempted murder.  For the reasons below, the petition will
be denied and a certificate of appealability shall not issue.

I.    BACKGROUND

      A.    Factual Background[1] and Procedural History

      On direct appeal, the Superior Court of New Jersey,
Appellate Division, summarized the evidence underlying Reed's
conviction as follows:

> On the evening of June 21, 2011, Camden City Police
> Acting Sergeant Benito Gonzalez and Acting Sergeant
> Christopher Frucci were conducting undercover
> surveillance of drug activity in Camden, specifically
> "in the area of Newton between Pine and Spruce
> Street."  Officer Gonzalez testified that as he and
> Officer Frucci were driving down Newton Avenue, he
> observed a black male and a female sitting on the
> steps of a residence.  The two were later identified
> as defendant and co-defendant Elizabeth Pitko.  The
> officers established a surveillance position to
> observe defendant and Pitko.  From his vantage point,
> Officer Gonzalez saw defendant and Pitko leave the
> steps, walk to a blue Ford Taurus parked across the
> street, and drive off.  The officers waited to see if
> they would return, which they did about twenty minutes
> later, shortly after midnight on July 22, 2011.
>
> A few moments after the pair returned, Officer
> Gonzalez observed
>
> > a black male wearing a red jacket and blue
> > jeans walking from Pine Street towards the
> > vehicle.  [The officer] also observed
> > [defendant] step out of the passenger side
> > of the vehicle. [Defendant] was on his
> > cellular phone having a conversation with
> > someone, at which time the male in a ... red
> > jacket approached him. They had a
> > conversation, and then they shook hands.
> > [Defendant] then went to the back of the

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), this Court affords deference
to the factual determinations of the State court.

> Ford Taurus, opened the trunk, went into the
> trunk, retrieved an item out of the trunk,
> [and] handed the item to the unknown black
> male.  The black male had the item in his
> hand, manipulated the item, and after a few
> seconds, handed [defendant] paper currency
> from his pants pocket.

The officer saw defendant place the money in his
pocket.  Defendant then returned to the passenger seat
of the running car, with Pitko in the driver's seat.
After another few minutes elapsed, the officer
observed defendant exit the vehicle and saw another
male approach him.  Officer Gonzalez contacted back-up
units that were in the area; however, the back-up
officers advised him they were still a few blocks
away, so he and Officer Frucci moved in, anticipating
their arrival.  The officers activated their emergency
lights and drove up behind defendant and the male.

When the officers exited the vehicle with weapons
drawn, defendant had already grabbed a package from
the trunk and was holding it in his right hand.
Defendant put the package in the trunk and his hand in
his jacket pocket.  Officer Gonzalez commanded
defendant to put his hands in the air.  Instead,
defendant slammed the trunk closed, ran to the
passenger side of the car, entered the vehicle, and
the vehicle sped off.  A chase ensued until the Taurus
crashed into parked cars on Clinton Street.  Defendant
then exited the vehicle and began to run.  Officer
Gonzalez gave chase on foot with his weapon drawn and
continuously ordered defendant to stop.  Officer
Gonzalez was injured when he tripped and fell face-
first on the pavement.  Nevertheless, he continued to
give chase.  Officer Gonzalez

> saw [defendant] make a left into a lot, and
> then [he] followed behind [defendant].  By
> the time [the officer] turned the lot,
> [defendant] had made it to the back of the
> house, and [the officer] continued to
> follow.  At this time, [the officer] was
> feeling more and more pain in [his] leg.
> [The officer] started coming to almost a
> limp.  At that point, [defendant] stopped at
> the back of the house, abruptly turned,
> pulled his weapon, and fired one round.

The officer was not struck by the bullet, but
nevertheless fell to the ground.  Defendant then
attempted to fire another shot at the officer, but the
gun malfunctioned.  Defendant dropped the weapon and
continued to run, but was later apprehended by other
officers after a "brawl" had ensued with the other
officers.  A search of defendant's person uncovered
his driver's license, Pitko's driver's license, and
over $1000 in cash; cocaine was found in the Taurus.

State v. Reed, No. A-1074-13T1, 2016 WL 529260, at *1-2 (N.J.

Super. Ct. App. Div. Feb. 11, 2016) (per curiam) (footnote

omitted; alterations in original).

In September 2013, a Camden County Grand Jury indicted and

charged defendant with fifteen counts, including third-degree

possession of a controlled dangerous substance ("CDS"), N.J.S.A.

2C:35-10(a)(1) (Count One); second-degree possession of a CDS

with intent to distribute, N.J.S.A. 2C:35-5(b)(2) (Count Two);

third-degree possession of a CDS with intent to distribute

within 1000 feet of a school, N.J.S.A. 2C:35-7 (Count Three);

second-degree possession of a CDS with intent to distribute

within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (Count

Four); second-degree resisting arrest/eluding, N.J.S.A. 2C:29-

2(b) (Count Five); fourth-degree resisting arrest, N.J.S.A.

2C:29-2(a)(2) (Count Six); first-degree attempted murder,

N.J.S.A. 2C:5-1 and 2C:11-3(a)(1) (Count Seven); second-degree

aggravated assault, N.J.S.A. 2C:12-1(b)(1) (Count Eight); third-

degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-

1(b)(2) (Count Nine); fourth-degree aggravated assault by

4

pointing, N.J.S.A. 2C:12-1(b)(4) (Count Ten); third-degree
resisting arrest, N.J.S.A. 2C:29-2(a)(3) (Count Eleven); fourth-
degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)
(Count Twelve); second-degree possession of a weapon for
unlawful purpose, N.J.S.A. 2C:39-4(a) (Count Thirteen); second-
degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)
(Count Fourteen); and second-degree certain persons not to have
weapons, N.J.S.A. 2C:39-7(b) (Count Fifteen).  Reed, 2016 WL
529260, at *2; ECF No. 7-5 (judgment of conviction).  The court
bifurcated the certain persons charge (Count Fifteen).  Reed,
2016 WL 529260, at *2.

Reed was tried before a jury, which, on May 31, 2013,
returned a guilty verdict as to Counts One through Fourteen.
Reed, 2016 WL 529260, at *2; ECF No. 7-92 at 10-11.  On June 3,
2013, the same jury returned a guilty verdict as to Count
Fifteen (the certain persons offense).  Reed, 2016 WL 529260, at
*2; ECF No. 7-93 at 37.  Reed was sentenced to an aggregate term
of 66 years' imprisonment, with 47 years and 3 months of parole
ineligibility.  Reed, 2016 WL 529260, at *2; ECF No. 7-5.  The
Appellate Division affirmed in February 2016.  Reed, 2016 WL
529260, at *1.  Certification was denied in April 2016, State v.
Reed, 224 N.J. 529 (2016).

Reed petitioned for post-conviction relief ("PCR") in July 2016.  ECF No. 7-16 (notice of PCR petition); ECF No. 7-17 (petition).  In August 2017, Reed filed a motion to compel police personnel files and internal affairs records.  ECF No. 7-20.  In November 2017, the PCR judge, who was also the trial judge, denied the motion.  ECF No. 24.  The court denied the PCR petition without a hearing in February 2018.  ECF 7-39 (order); ECF 7-40 (opinion).  The Appellate Division affirmed in January 2020.  State v. Reed, No. A-5063-17T1, 2020 WL 468320, at *5 (N.J. Super. Ct. App. Div. Jan. 29, 2020) (per curiam).  Certification was denied in May 2020.  State v. Reed, 241 N.J. 383, 228 A.3d 848, 849 (2020).

B.   The Habeas Petition

Reed filed his § 2254 petition in August 2020, asserting the following grounds for relief: (1) the trial court erred when it (a) "allowed Det. J. Simpson to testify as a surrogate in place of the actual crime scene investigator" and (b) admitted "ballistic evidence documentation" pursuant to the business records exception (ECF No. 1 at 7, 28 (Ground One)); (2) the State "committed discovery and Brady[2] violations when it failed to disclose to defense computerized dispatched records (CAD) and information that Sgt. Kevin Martin was a material witness who

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

made statements over the police dispatcher exculpatory to the defense" (ECF No. 1 at 9, 30 (Ground Two)); (3) petitioner's due process rights were violated when Simpson "allowed police radio dispatch transaction with exculpatory value to be erased" (ECF No. 1 at 10, 33 (Ground Three)); (4) trial counsel was ineffective for failing to object to the admission of "ballistic evidence, documentation, and chain of custody via the business record exception" (ECF No. 1 at 12, 34 (Ground Four)); (5) trial counsel was ineffective for "failing to move for an adverse inference instruction and other defense lever[ag]ing discovery sanctions when it was realized that the State had violated defense due process by allowing the radio transmissions evidence to be destroyed" (ECF No. 1 at 35 (Ground Five)); petitioner's due process rights were violated when Simpson "allowed police radio dispatch transaction with exculpatory value to be erased" (ECF No. 1 at 37 (Ground Six, which is duplicative of Ground Three)); trial counsel was ineffective for failing to "impeach the character of Officer Frucci by using the record of multiple excessive force claims lodged against him (ECF No. 1 at 39 (Ground Seven)); (8) counsel was ineffective for "failing to obtain exculpatory and impeachment evidence in the form of computer aided dispatch (CAD) records although they were available to him upon request and supported the defense that Sgt. Gonzalez's story of 'attempted murder' was not true" (ECF

7

No. 1 at 42 (Ground Eight)); (9) trial counsel was ineffective for "failing to familiarize[e] himself with the Camden Police Department communications procedure before cross examin[ing] Det. Janell Simpson and other officers concerning erased radio transmissions" (ECF No. 1 at 45 (Ground Nine)); and (10) petitioner's conviction must be reversed on the basis of "the cumulative error that occurred during trial" (ECF No. 1 at 48 (Ground Ten)).

The State answered the petition in November 2020 (ECF No. 7), and Reed replied in February 2021 (ECF No. 13).  The matter is therefore fully submitted and ready for decision.

II.  STANDARD OF REVIEW

The district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas petitioner must establish entitlement to relief for each claim in his petition based upon the record that was before the state court.  See Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013); Parker v. Matthews, 567 U.S. 37, 40–41 (2012).  District courts must be "highly deferential" to the determinations of state trial and appellate courts.  See Renico v. Lett, 559 U.S. 766, 773 (2010).

If the state courts have adjudicated a claim on the merits, the district court shall not grant a writ of habeas corpus unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is "clearly established" for these purposes if it is clearly expressed in "the holdings, as opposed to the dicta" of the United States Supreme Court.  See Woods v. Donald, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Id.  If a petitioner challenges an allegedly erroneous state court factual determination, that determination "shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The relevant state court decision for federal habeas corpus review is the last reasoned state court decision.  See Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008).  These standards

9

apply "even where there has been a summary denial" by the state court.  Cullen v. Pinholster, 563 U.S. 170, 187 (2011).

III.  DISCUSSION

A.  Failure to Disclose the CAD Report and Preserve the Radio Calls (Grounds Two, Three, Five, Six, Eight, and Nine)

Six of Reed's claims involve the CAD report and the deleted radio calls.  ECF No. 1 at 8-11, 29-33, 34-38, 41-47 (Grounds Two, Three, Five, Six, Eight, and Nine).  Specifically, Reed asserts that his constitutional rights were violated on the grounds that: (1) the State failed to disclose the CAD report (Ground Two); (2) Officer Simpson allowed the radio dispatch transmissions to be erased (Grounds Three and Six); and (3) trial counsel was ineffective for (a) failing to secure the CAD report (Ground Eight), (b) failing to call Sergeant Kevin Martin as a witness regarding the CAD report (Ground Two), (c) failing to move for an adverse inference for the loss of the radio transmissions (Ground Five), and (d) failing to prepare sufficiently to cross-examine Officer Simpson concerning the lost transmissions (Ground Nine).  As explained below, the state courts rejected these claims.

The Appellate Division held that Reed's claim that the State violated Brady by failing to disclose the CAD report for the night the crimes took place was meritless because the

10

disclosure of the report would not have changed the outcome.

The court explained:

> The [CAD] report has two entries, the first of which says "shots fired[,]" and the second of which says that no shots were fired.

> Rule 3:13-3 states that "[d]iscovery shall include exculpatory information or material." "It is well-settled that the suppression by the prosecution of evidence favorable to a defendant violates due process of law where the evidence is favorable to the defense, and is material." State v. Russo, 333 N.J. Super. 119, 133-34 (App. Div. 2000) (citing Brady, supra, 373 U.S. at 87, 83 S. Ct. at 1197, 10 L. Ed. 2d at 218). To establish a Brady violation, defendant must satisfy a three-prong test: "(1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." Id. at 134.

> Evidence will be considered material where a "defendant demonstrates that there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." Ibid.  The question is whether a defendant received a fair trial, namely a trial in which the verdict is "worthy of confidence" even without the presentation of the undisclosed evidence. Ibid.

> . . .

> . . . [D]efendant has failed to establish that if the evidence had been properly introduced, the result would have been different. Russo, supra, 333 N.J. Super. at 134.  The evidence at trial made clear that an officer recovered the firearm at the scene and that the recovered gun misfired, further corroborating Officer Gonzalez's story.  There was ample evidence in the record to support defendant's conviction for attempted murder, and therefore the result would not have been different even if the allegedly withheld evidence was introduced.

Reed, 2016 WL 529260, at *8-9.

11

As the Appellate Division recognized, there are three components of a Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281–82 (1999).  To show prejudice, a petitioner must show that "there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Id. at 289 (cleaned up); see also United States v. Bagley, 473 U.S. 667, 682 (1985).

Here, in light of the "ample evidence in the record to support [Reed's] conviction for attempted murder" -- including the testimony of several police officers, supported by corroborating physical evidence of the crimes, including that the weapon was recovered in a misfired condition, see Reed, 2016 WL 529260, at **1–2, 9 -- the Appellate Division reasonably found that Reed has not established that had the CAD report been disclosed, the outcome of the case would have been different. See, e.g., Johnson v. Folino, 705 F.3d 117, 129 (3d Cir. 2013) ("Suppressed evidence that would be cumulative of other evidence or would be used to impeach testimony of a witness whose account is strongly corroborated is generally not considered material for Brady purposes."); Moss v. DeBalso, No. 19-106, 2021 WL

12

2952900, at *17 (M.D. Pa. July 14, 2021) (petitioner failed to establish prejudice prong of Brady where "the Commonwealth presented ample and sufficient evidence to support Petitioner's convictions").

On this record, Reed has not established that the Appellate Division's rejection of this claim was contrary to or involved an unreasonable application of Brady and its progeny, or that it was based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, habeas relief on this claim will be denied.

The Appellate Division also rejected Reed's claim that Officer Simpson violated his due process rights by allowing the police radio transmissions to be erased and destroyed.  The court analyzed the claim as follows:

> Officer Simpson was employed by the Camden City Police Department on the night of the incident and was asked to locate the 911 calls and police radio transmissions involving defendant.  Officer Simpson failed to collect the recordings before they were recycled and reused.
>
> It is well recognized that "a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."  State v. Hollander, 201 N.J. Super. 453, 478 (App. Div.), certif. denied, 101 N.J. 335 (1985) (citation omitted).  However, this privilege is not absolute.  Ibid.  There are
>
> > three factors on which a court should focus to determine whether a due process violation has occurred when there has been either

> suppression, loss or destruction of physical
> evidence in a criminal trial: (1) whether
> there was bad faith or connivance on the
> part of the government; (2) whether the
> evidence suppressed, lost or destroyed was
> sufficiently material to the defense; (3)
> whether defendant was prejudiced by the loss
> or destruction of the evidence.
>
> [Id. at 479 (citations omitted).]

Here, defendant fails to point to any evidence of bad
faith or connivance on the part of the State.  Rather,
the record suggests that an honest error occurred and
the evidence was lost.  At trial, when Officer Simpson
was cross-examined on her failure to retain the radio
calls, she explained she

> was new to the shooting and response unit.
> [She] had just gotten laid off.  [She] got
> rehired back, and at that time in the unit,
> [she] didn't know [her unit] had to collect
> [the radio calls].  [She] thought the Camden
> County Prosecutor's Office would collect
> them, and it was a miscommunication on [her]
> part.

Moreover, as discussed above, the evidence is of
questionable materiality given the weight of the
evidence in the record supporting defendant's
conviction.  Finally, defendant's counsel capitalized
on the officer's failure to preserve the evidence in
his closing arguments, questioning the veracity of
Officer Simpson's assertion and stating that defendant
was "entitled" to hear the contents of the radio
calls.  Thus, as defense counsel was able to
capitalize on the oversight, it is not clear that
defendant suffered prejudice as a result of the loss
of evidence.

Reed, 2016 WL 529260, at *9-10 (footnote omitted).

    To establish a due process violation based on the failure

to preserve potentially exculpatory evidence, a defendant must

show: (1) the potentially exculpatory nature of the evidence was

apparent at the time of destruction or loss; (2) there is a lack of "comparable evidence by other reasonably available means"; and (3) the government acted in "bad faith."  California v. Trombetta, 467 U.S. 479, 489 (1984); Arizona v. Youngblood, 488 U.S. 51, 58 (1988).

The Appellate Division's determination that Officer Simpson's failure to preserve the radio calls was "an honest error" and that there was no evidence of bad faith, Reed, 2016 WL 529260, at *9-10, is entitled to deference in the absence of clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"); Williams v. Ryan, No. 17-1834, 2020 WL 7022233, at *4 (D. Ariz. Nov. 27, 2020) ("the state court's factual determinations concerning the loss of the recording are entitled to deference, and in any event the loss of the recording was disclosed to Petitioner in sufficient time for use at trial -- indeed, the jury was told about the loss"). Reed has presented no such evidence.  Accordingly, he has failed to establish a due process violation based on the deleted radio calls.  See Youngblood, 488 U.S. at 58 ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a

denial of due process of law."); Nguyen v. Pallares, No. 19-
2952, 2021 WL 352069, at **16–17 (N.D. Cal. Feb. 2, 2021)
(denying motion based on Trombetta/Youngblood where petitioner
failed to rebut state court's factual findings that police who
lost audio recording did not act in bad faith) (citing 28 U.S.C.
§ 2254(e)(1)).  As Reed has not established that the Appellate
Division's rejection of this claim was contrary to or an
unreasonable application of Supreme Court precedent, or that it
was based on an unreasonable determination of the facts, habeas
relief on this claim will be denied.

Reed's ineffective assistance claims related to the CAD
report and radio transmissions fare no better.  The Appellate
Division found that the claims lacked sufficient merit to
warrant discussion in a written opinion.  Reed, 2020 WL 468320,
at *5.  Rather, it affirmed the PCR court for the reasons given
by the PCR judge, adding only that it was "convinced the PCR
judge correctly determined that the record failed to present a
prima facie case of ineffective assistance of counsel."  Id.

The Sixth Amendment guarantees the accused the "right . . .
to have the Assistance of Counsel for his defense."  U.S. Const.
amend. VI; see Strickland v. Washington, 466 U.S. 668, 686
(1984).  A claim of ineffective assistance has two necessary
components.  Id. at 687.  First, the defendant must "show that
counsel's representation fell below an objective standard of

16

reasonableness," id. at 687–88, meaning he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. Second, a petitioner must establish prejudice, i.e., a reasonable probability that the result of the trial would have been different absent the deficient act or omission. Id. at 687. Further, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

On habeas review, it is not enough that a federal judge would have found counsel ineffective. Rather, the judge must find that the state court's resolution of the issue was unreasonable, a higher standard. Harrington v. Richter, 562 U.S. 86, 101 (2011). "And while judges may be tempted to second guess defense counsel's decisions, we must keep in mind that 'advocacy is an art and not a science, and . . . strategic choices must be respected in these circumstances if they are based on professional judgment.'" Gaines v. Superintendent Benner Twp. SCI, 33 F.4th 705, 712 (3d Cir. 2022) (quoting Strickland, 466 U.S. at 681). In other words, "counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." Rolan v. Vaughn, 445 F.3d 671, 681–82 (3d Cir. 2006).

17

As to Reed's argument that trial counsel was ineffective for failing to request the CAD report in discovery, the PCR court found that Reed failed to demonstrate prejudice:

> Although the Defendant argues that the outcome of his trial would have been different had his trial attorney obtained the CAD report "because the jury would not have been able to convict the Defendant of attempted murder based upon the information in the CAD report," the Defendant has failed to demonstrate that, had trial counsel introduced the report, the outcome of the trial would have been different as is required under the second prong of the Strickland-Cronic test.
>
> . . . The Appellate Division determined that the introduction of the CAD report into evidence would not have resulted in a different outcome for the trial. . . .
>
> Although the Defendant now frames this same argument in terms of a claim of ineffective assistance of counsel, the Defendant's argument is again without merit, because the Defendant has failed to establish that, had Defense counsel introduced the CAD report, the outcome of the Defendant's trial would have been different.  Thus, even if the Defendant were able to overcome the strong presumption that counsel exercised reasonable professional judgment and sound trial strategy in fulfilling his responsibilities, . . . the Defendant fails to satisfy the second prong of the Strickland-Cronic test, because he has failed to demonstrate that but for Defense counsel's failure to introduce the CAD report, the result of the trial would have been different.
>
> As such, the Defendant has failed to establish a prima facie showing that trial counsel was ineffective for failing to request and introduce the CAD report at trial.

ECF No. 7-40 at 23-24 (citations omitted).

The PCR court also found that Reed failed to establish prejudice from trial counsel's failure to request an adverse

inference charge prior to trial for the State's destruction of

the audio dispatch recording:

> An adverse inference charge may be appropriate when
> the State loses or destroys evidence before trial.
> State v. Dabas, 215 N.J. Super, 114, 140 (App. Div.
> 2017). However, the Appellate Division has held that
> an adverse inference charge is not appropriate where
> the evidence in question is lost through inadvertence
> or technical malfunction, and not the purposeful acts
> of law enforcement. Id.

> Here, the Defendant argues that trial counsel was
> ineffective for failing to request an adverse
> inference charged based on "destruction of exculpatory
> evidence by the State," essentially alleging that the
> State, in bad faith, destroyed exculpatory evidence by
> erasing the dispatch calls from the night in question
> in the CAD report. Def. Co. Br. 32.

> This Court notes that the in the Defendant's direct
> appeal, the Appellate Division held that, with respect
> to this argument, "the Defendant fails to point to any
> evidence of bad faith or connivance on the part of the
> State. Rather, the record suggests that an honest
> error occurred, and the evidence was lost." Reed,
> supra at 24. The Defendant has again failed [to]
> allege sufficient facts to demonstrate bad faith on
> behalf of the State, or that the loss of the evidence
> in question was the result of anything more nefarious
> than inadvertence or a technical malfunction. Dabas,
> supra.

> Additionally, the Defendant has failed to assert what,
> if any, exculpatory evidence the audio recordings
> would have revealed, and has failed to submit any
> affidavits or certifications in support of such
> assertions, as is required by [State v. Cummings, 321
> N.J. Super. 154, 170 (N.J. Super. Ct. App. Div. May
> 11, 1999)]. As such, the Defendant has failed to
> provide any evidence that trial counsel's failure to
> request an adverse inference jury instruction
> prejudiced the Defendant.

> Accordingly, the Defendant has failed to make a prima
> facie showing that trial counsel was ineffective for

failing to ask for an adverse inference charge
regarding this issue during the charge conference.

ECF No. 7-40 at 35–36.

Finally, as to Reed's argument that trial counsel was
ineffective for not calling Sergeant Martin as a witness, the
PCR court found that Reed failed to establish deficient
performance:

With respect to the Defendant's argument that trial
counsel was ineffective for failing to call Sergeant
Kevin Martin as a witness, the Defendant does not
identify any specific acts or omissions that deem
defense counsel's performance ineffective.  Rather,
the Defendant simply asserts that defense counsel was
ineffective for not calling Sergeant Martin as a
witness, who allegedly could have testified as to the
contents of the CAD report.  The Defendant then
essentially reiterates his previously-addressed
argument of ineffective assistance of counsel as it
pertains to counsel's failure to request the CAD
report.  This argument has already been held to be
without merit.

This Court also notes that the Defendant has provided
no certifications or affidavits detailing what
Martin's testimony would have been, had he been called
to testify by trial counsel, as required by Cummings,
supra, 321 N.J. Super. at 170.  Rather, the Defendant
merely speculates that "it is 'inconceivable' that
Sergeant Martin believed that the Defendant attempted
to murder Officer Gonzalez.  Thus, the Defendant's
allegation that "[Martin's] testimony would clearly
have resulted in a different verdict" is supported by
no evidence, and is therefore a "speculative
deficiency," insufficient to substantiate an
ineffective assistance of counsel claim.  In short,
the Defendant fails to allege facts sufficient to
demonstrate defense counsel's substandard performance.

Accordingly, this Court holds that the Defendant has
failed to establish a prima facie claim of ineffective
assistance of counsel with respect to this argument.

ECF No. 7-40 at 52-53 (citations omitted).

Given the Appellate Division's finding that the underlying CAD-report and deleted-radio-transmissions claims lack merit, Reed has failed to establish that the state courts' rejection of the related ineffective assistance claims was contrary to or an unreasonable application of Strickland and its progeny or an unreasonable application of the facts.  Johnson v. Tennis, 549 F.3d 296, 301 (3d Cir. 2008) (counsel will not be found ineffective for failing to present an unmeritorious claim or objection); Turner v. Ransom, No. 20-0197, 2021 WL 2581251, at *12 (W.D. Pa. June 23, 2021) (finding state court reasonably applied Strickland standard to find no ineffective assistance where evidence was no longer available by the time counsel requested it, the record suggested that lost materials had been recycled in the ordinary course, and there was no evidence that State had acted in bad faith).

Additionally, Reed's speculation about what Martin would have said if he had testified, and his blanket assertion that the outcome of the trial would have been different had Martin testified, are insufficient to establish that the state courts' resolution of this issue was contrary to or an unreasonable application of Strickland and its progeny or an unreasonable application of the facts in light of the evidence presented. See Freeman v. Davis, No. 18-8269, 2021 WL 4705009, at *18

21

(D.N.J. Oct. 7, 2021) ("Petitioner has not provided any sworn testimony, affidavit, or certification from either witness. Petitioner's mere speculation regarding the potential witnesses' testimony is insufficient to establish prejudice.") (citation omitted).

Finally, given the strong evidence of Reed's guilt, the state courts' finding that he failed to establish prejudice resulting from counsel's alleged deficient performance was not contrary to or an unreasonable application of Strickland and its progeny or an unreasonable application of the facts in light of the evidence presented. See, e.g., Albrecht v. Horn, 485 F.3d 103, 129 (3d Cir. 2007) ("The ample if not overwhelming evidence of Albrecht's guilt . . . supports the conclusion that he suffered no prejudice as a result of counsel's deficient performance . . . ."); Morales v. Clark, No. 19-4971, 2021 WL 7278923, at *10 (E.D. Pa. Nov. 15, 2021) ("The strength of the prosecution's case is relevant to determining whether Petitioner was prejudiced by counsel's omission.  Given these review principles and the strong evidence of guilt presented at trial, it is impossible to find that the state court unreasonably applied Strickland's prejudice standard."), report and recommendation adopted, 2022 WL 622742 (E.D. Pa. Mar. 2, 2022); Cho Lee Lin v. Bartkowski, No. 10-5502, 2012 WL 3201943, at *35 (D.N.J. Aug. 1, 2012) ("Given the overwhelming evidence of

guilt, this Court finds that the New Jersey courts' rejection of
Petitioner's ineffective assistance claims for failure to show
prejudice was not contrary to, or an unreasonable application of
*Strickland* and its progeny."). Accordingly, habeas relief on
these claims will be denied.

B.   Crime Scene Testimony and Business Record Admission
     (Grounds One and Four)

Reed argues that (1) his right to confrontation was
violated when the trial court allowed Officer Simpson to testify
about crime-scene evidence and chain of custody because she did
not collect the evidence, and (2) trial counsel was ineffective
for not objecting to the admission of the property inventory
form on hearsay grounds. ECF No. 1 at 6, 11-12, 27-29, 33-34
(Grounds One and Four).

The Appellate Division analyzed, and rejected, Reed's
Confrontation Clause and evidentiary arguments as follows:

> Defendant argues that allowing Officer Simpson to
> testify regarding the evidence discovered at the crime
> scene and the chain of custody of the evidence, when
> she herself did not actually collect the evidence,
> violated his right to confrontation under the Sixth
> Amendment.  Defendant also argues that the records
> admitted were not business records and should have
> been excluded as inadmissible hearsay.
>
> At trial, Officer Simpson testified that she responded
> to the "shots fired" call and proceeded to the scene
> of both the crash and the shooting.  She testified it
> was her duty to collect ballistic evidence and that
> she directed evidence officers to collect the evidence
> found at the scene.  She testified that the "weapon
> and the projectile" were collected.  Officer Simpson

was presented with and recognized "a Camden City
evidence and property inventory form" which detailed
all of the physical evidence discovered at the scene.
She also testified that the "chain of custody form"
tracked the chain of custody of each of the collected
items.

Defense counsel objected to the form being introduced
into evidence because the document indicated that it
was an Officer Rishman who actually picked the weapon
up at the scene.  Defense counsel stated that Rishman
should have been the one to testify as to the
collection of the weapon, as he was the one who wrote
the report.  The State successfully moved the document
into evidence under the business records exception to
the hearsay rule.

We conclude that defendant's Sixth Amendment
Confrontation Clause argument is without sufficient
merit to warrant discussion in a written opinion. R.
2:11-3(e)(2).  The Supreme Court has made clear "it is
not the case[ ] that anyone whose testimony may be
relevant in establishing the chain of custody,
authenticity of the sample, or accuracy of the testing
device, must appear in person as part of the
prosecution's case."  Melendez-Diaz v. Massachusetts,
557 U.S. 305, 311 n.1 (2009).  Rather, the Court
explained that gaps in chain of custody go to the
weight of the evidence, not its admissibility.  Ibid.

Defendant also objects to the admission of the
documents into evidence, arguing that the forms were
improperly introduced as business records.  In
criminal cases, a document is admissible as an
exception to the hearsay rule if it is not
testimonial.  Crawford v. Washington, 541 U.S. 36, 56
(2004).  Business records are not testimonial.  Ibid.
To qualify as a business record:

> First, the writing must be made in the
> regular course of business.  Second, it must
> be prepared within a short time of the act,
> condition or event being described.
> Finally, the source of the information and
> the method and circumstances of the
> preparation of the writing must justify
> allowing it into evidence.

> [State v. Matulewicz, 101 N.J. 27, 29
> (1985).]
>
> At trial, Officer Simpson testified that the Camden
> City Police Department created similar records every
> time physical evidence was recovered.  The documents
> were admitted as business records without objection.
> Defendant now contends the records cannot be
> admissible business records because they were prepared
> in anticipation of litigation.  Defendant has offered
> no evidence that these records were prepared for
> purposes of litigation, and no such evidence appears
> on this record.  Thus, the judge did not err by
> admitting the documents as business records.

Reed, 2016 WL 529260, at **10-11.

The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the . . . right to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In Crawford v. Washington, 541 US. 36 (2004), and its progeny, the Supreme Court held that the Confrontation Clause bars the admission of testimonial statements of witnesses absent from trial that are admitted to establish the truth of the matter asserted in the statement, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  Id., 541 US. at 59, 60 n.9 (2004); see also Davis v. Washington, 547 U.S. 813, 823-24 (2006).  As the Appellate Division acknowledged, however, regarding chain-of-custody testimony, "it is not the case[] that anyone whose testimony may be relevant in establishing the chain of custody . . . must appear in person as

25

part of the prosecution's case." (internal quotation marks and citations omitted).

Here, the Appellate Division applied the relevant Supreme Court precedent in determining that Officer Simpson's chain-of-custody testimony did not violate Reed's right to confrontation. Reed, 2016 WL 529260, at *10–11 (quoting Melendez-Diaz, 557 U.S. at 311 n.1). As the Appellate Division noted, gaps in the chain of custody go to the weight of the evidence, not its admissibility. Melendez-Diaz, 557 U.S. at 311 n.1.; see also Symms v. Wingard, No. 15-1384, 2019 WL 426484, at *10–11 (W.D. Pa. Feb. 4, 2019) ("to the extent Petitioner's complaint is a challenge to the chain-of-custody of the firearms evidence introduced in his case, such claim is not a confrontation issue but rather goes to the weight to be afforded to [the firearms expert's] testimony"). As such, this is "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case"; thus, it "[does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. 362, 406 (2000).

Further, counsel had the opportunity to explore weaknesses or gaps in the chain of custody during cross examination of Officer Simpson. ECF No. 7-83 at 106–115; see also, e.g., United States v. Tercier, 835 F. App'x 471, 483 (11th Cir. 2020) ("While the government did not proffer its translators as

witnesses, . . . it offered Special Agent Weber as a witness, who testified to the translation verification process and the transcript's accuracy.  Because the Confrontation Clause 'only insists that testimony be subject to cross-examination' and Special Agent Weber was cross-examined, the Confrontation Clause was not violated") (quoting United States v. Curbelo, 726 F.3d 1260, 1275-76 (11th Cir. 2013)); United States v. Ortega, 750 F.3d 1020, 1025 (8th Cir. 2014) ("chain of custody alone does not implicate the Confrontation Clause"); Johnson v. Inch, No. 14-22836, 2020 WL 7130690, at *11 (S.D. Fla. Mar. 6, 2020) ("Analyst Murphy's testimony [that she received and examined DNA evidence and it did not appear that the evidence had been tampered with] did not violate Petitioner's confrontation rights, nor was his trial rendered fundamentally unfair resulting from the state's failure to call [witnesses] to testify at trial regarding the securing of the DNA samples and its chain of custody."), report and recommendation adopted, 2020 WL 7129586 (S.D. Fla. Dec. 4, 2020).  On this record, the Court cannot find that the Appellate Division's rejection of the confrontation claim was contrary to or an unreasonable application of Crawford and its progeny or an unreasonable application of the facts in light of the evidence presented.

Further, Reed's claim that the trial court erred in admitting Officer Simpson's testimony and the inventory form is

27

not cognizable on habeas review because federal courts reviewing habeas claims cannot "reexamine state court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  If the state court has found no error in the evidentiary ruling at issue under state law, a federal habeas court may only consider whether admitting the evidence at issue was so prejudicial as to violate due process, rendering the trial fundamentally unfair.  See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Spencer v. Texas, 385 U.S. 554, 563-64 (1967); see also Guilfoil v. May, No. 516-291, 2019 WL 1004373, at *5 (D. Del. Mar. 1, 2019) ("to the extent Claim One challenges the trial court's interpretation and application of Delaware chain of custody law, it asserts an issue of state law that is not cognizable on federal habeas review").

The admission of the challenged evidence did not violate Reed's due process rights.  First, Officer Simpson had an active role in the collection of evidence at the crime scene, i.e., she responded to the "shots fired" call as a member of the Camden City Police Strategic Multi Agency Shooting and Homicide Team (ECF No. 7-38 at 95-96); she collected the ballistic evidence from the crime scene (id. at 98 (testifying that she collected the weapon and a projectile)); and she directed other officers to collect evidence (id. at 96 (responding "yes" to the question, "[D]id you point out the location where each piece of

28

evidence that needed to be collected was?"), 98 (responding "yes" to the question, "[D]id you direct the collection of each of those pieces and each of those items that's listed on [the property inventory form]?")).  In light of this, the Appellate Division's determination that Officer Simpson's testimony was properly admitted was not unreasonable.

Second, affording deference to the state courts' factual finding that records similar to the inventory form are created when physical evidence is recovered, see ECF No. 7-83 at 100–101, and in light of Reed's failure to establish that the records were created in preparation for litigation, the Appellate Division's finding that the inventory form was admissible as a business record is also not unreasonable.  See, e.g., Everett v. Long, No. 21-1267, 2021 WL 5895119, at **6-7 (10th Cir. Dec. 14, 2021) ("Everett's argument that the evidence property report and envelope were testimonial evidence because they were created for use at trial does not overcome the presumption of correctness of the police officer's testimony at trial, which established that a crime scene investigation technician created the documents following the police department's normal course of business in processing and storing evidence from a crime scene.").  Nor were these rulings so prejudicial as to violate due process and render Reed's trial fundamentally unfair.  Thus, as Reed has failed to establish a

29

constitutional violation resulting from the admission of the challenged evidence, habeas relief on this claim will be denied.

The claim that counsel was ineffective for not objecting to the admission of the inventory report on hearsay grounds is also without merit because the Appellate Division reasonably concluded that the inventory report was properly admitted as a business record.  See Johnson v. Tennis, 549 F.3d 296, 301 (3d Cir. 2008) (counsel will not be found ineffective for failing to present an unmeritorious claim or objection); see also Melendez-Diaz, 557 U.S. at 324 ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because -- having been created for the administration of an entity's affairs and not for the purpose of proving some fact at trial -- they are not testimonial."); Johnson v. Inch, No. 19-23494, 2022 WL 17669931, at *9 (S.D. Fla. Aug. 30, 2022) ("the state court did not err in determining that admission of the forensic DNA report did not violate Petitioner's confrontation rights, nor was Petitioner's trial rendered fundamentally unfair resulting from the state's failure to call Dr. Silla to testify at trial regarding the securing of the specimens and its chain of custody.  Accordingly, Petitioner has not demonstrated prejudice under Strickland arising from counsel's failure to pursue this claim"), report and recommendation adopted, 2022 WL 17668214

30

(S.D. Fla. Dec. 14, 2022); <u>Lee-Purvis v. Pennsylvania</u>, 314 F. Supp. 3d 665, 677 (E.D. Pa. 2018) ("The Superior Court determined that trial counsel was not ineffective, because the omitted Confrontation Clause claim lacked merit.  This method of adjudicating an ineffective assistance claim is consistent with Third Circuit precedent; hence, it is reasonable.") (citing <u>Johnson</u>, 549 F.3d at 301; <u>Fischetti</u>, 384 F.3d at 149.").

Even if counsel were deficient in failing to object to the admission of the document as a business record, however, given the strong evidence of guilt, Reed has failed to establish prejudice.  Accordingly, habeas relief on this claim will be denied.

C.   Cross-Examination of Sergeant Frucci (Ground Seven)

Reed argues that trial counsel was ineffective for failing to investigate Sergeant Frucci's alleged history of civil rights and excessive force complaints.  ECF No. 1 at 38-40 (Ground Seven).  The PCR court rejected this argument, finding that Reed failed to establish deficient performance or prejudice:

> . . . [T]o make a prima facie case that trial counsel was ineffective for failing to properly investigate the case, the petitioner must "assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." <u>Cummings</u>, <u>supra</u>, 321 N.J. Super. at 170 (citing R. 1:6-6).
>
> Defendant argues that he advised trial counsel that Officers Frucci and Diaz physically assaulted him

during the arrest, that he asked trial counsel to
investigate Officer Frucci's history regarding
lawsuits against him for the use of excessive force,
and that trial counsel was ineffective for failing to
do so.  This court notes that on August 22, 2017, the
Defendant filed a Motion to Compel Police Personnel
files and Internal Affairs records of Officer Frucci,
based on the very same allegations that Officer Frucci
had previously been the subject of civil rights
lawsuits involving the use of excessive force.  With
respect to the disclosure of Officer Frucci's
personnel and internal affairs files, this Court
denied the Defendant's Motion, holding in relevant
part:

> Despite the fact that at the Certain
> Persons' Trial, the Defendant testified and
> made possible allegations of excessive
> force, the Defendant presented no further
> evidence to bolster his claim that excessive
> force was used by Officer Frucci or any
> other officer to effectuate the Defendant's
> arrest on June 21, 2011.  Despite the
> Defendant's testimony at the Certain
> Persons' Trial, the Defendant was previously
> convicted on fourteen out of fifteen counts
> at trial without ever testifying as to the
> use of excessive force by arresting
> officers.

> Likewise, despite the fact the Defendant has
> presented evidence of his filing a complaint
> against the Camden Police Department, the
> Defendant's complaint cannot be
> characterized as solely an excessive force
> complaint . . . The complaint filed by the
> Defendant contains only one sentence
> alleging the use of excessive force, and it
> does not specifically implicate Officer
> Frucci, or any officer, as the aggressor.

> Despite the fact Officer Frucci was named in
> several unrelated civil rights lawsuits
> pertaining to the use of excessive force,
> the Defendant has offered no evidence to
> suggest that Officer Frucci's involvement in
> those civil rights cases somehow impugns his
> credibility as a witness in the present

32

> matter, or otherwise bolsters the
> Defendant's claims, as is required by
> <u>Harris</u>.
>
> The Defendant has failed to assert what, if any,
> specific facts that any investigation of Officer
> Frucci would have revealed, and has failed to submit
> any affidavits or certifications in support of such
> assertions, as is required by <u>Cummings</u>, <u>supra</u> 321 N.J.
> Super. at 170.  As such, the Defendant has failed to
> provide any evidence that trial counsel's failure to
> investigate the history of excessive force complaints
> against Officer Frucci prejudiced the Defendant.
>
> Accordingly, the Defendant has failed to make a prima
> facie showing that trial counsel was ineffective for
> failing to investigate Officer Frucci's history of
> civil rights and excessive force cases.

ECF No. 7-40 at 38–39.

A failure to investigate potentially exculpatory evidence or witnesses may form the basis of ineffective assistance of counsel.  See <u>Strickland</u>, 466 U.S. at 690–91; see also <u>Brown v. United States</u>, No. 13-2552, 2016 WL 1732377, at *4–5 (D.N.J. May 2, 2016).  To establish this claim, a petitioner "must make a comprehensive showing as to what the investigation would have produced.  The focus of the inquiry must be on what information would have been obtained . . . and whether such information, assuming admissibility in court, would have produced a different result."  See <u>Brown</u>, 2016 WL 1732377, at *5 (quoting <u>United States v. Askew</u>, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (internal quotation marks omitted)).  Where a petitioner asks the court to "speculate both as to whether [a witnesses] would in fact have testified on his behalf and as to what [the witness's] testimony

33

would have been," rather than presents the court with sworn
testimony, he will not be able to establish prejudice. Duncan
v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001) (citing United
States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989)); see also
Freeman, 2021 WL 4705009, at *17.

Here, the state court reasonably found that, in light of
Reed's failure to (1) "assert what, if any, specific facts that
any investigation of Officer Frucci would have revealed," and
(2) "submit any affidavits or certifications in support of such
assertions," Reed has failed to establish prejudice.  ECF No. 7-
40 at 38-39; see also Freeman, 2021 WL 4705009, at *18.
Accordingly, Reed has not established that the state courts'
rejection of this claim was contrary to or an unreasonable
application of Strickland and its progeny or was an unreasonable
application of the facts in light of the evidence presented.
Habeas relief on this claim will therefore be denied.

D.   Cumulative Error (Ground Ten)

Reed argues that the alleged violations of his
constitutional rights cumulatively warrant habeas relief.  ECF
No. 1 at 47 (Ground Ten).  The Appellate Division rejected
Reed's cumulative error argument on direct appeal, finding it to
be "without merit in light of [the court's] conclusion that no
error occurred below."  Reed, 2016 WL 529260, at *11.  The court
also rejected Reed's cumulative error claim on collateral

review.  Reed, 2020 WL 468320, at *5; see also ECF 7-40 at 54-55
(PCR court rejected the cumulative error argument, finding that:
"the Defendant has not established that any of his claims with
respect to trial counsel's alleged errors resulted in
prejudice"; "there was ample evidence in the record to support
the Defendant's conviction, and that the result of the
Defendant's trial would not have been different even if the
allegedly withheld evidence was introduced, or if the alleged
errors by counsel had been absent"; and "as none of the alleged
errors were prejudicial, . . . the theory of cumulative error is
not applicable to the Defendant's claims") (citations omitted).

The Third Circuit has recognized that "errors that
individually do not warrant habeas relief may do so when
combined."  Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007).
However, a habeas petitioner is not entitled to relief based on
cumulative error unless he can establish actual prejudice.  Id.
(citing Brecht v. Abrahamson, 507 U.S. 619 (1993)).

Here, the state courts reasonably found that there were no
errors to aggregate, and that Reed failed to establish
prejudice.  On this record, Reed has not established that the
rejection of his cumulative error claim was contrary to or an
unreasonable application of Supreme Court precedent or was an
unreasonable application of the facts in light of the evidence
presented.  See, e.g., United States v. Herrera-Genao, 419 F.

35

App'x 288, 296 (3d Cir. 2011) ("Herrera-Genao complains only of the cumulative effect of the preceding claims; because we have found no error regarding those claims, Herrera-Genao's claim of cumulative error also fails."); United States v. Tiangco, 225 F. Supp. 3d 274, 290 (D.N.J. 2016) ("I have considered the defendant's claims of error cumulatively.  Individually, they do not raise a substantial possibility of prejudice.  Taken together, they likewise do not suggest any prejudice, unfairness, or evidentiary insufficiency that would warrant a new trial or judgment of acquittal.").  Accordingly, habeas relief on this claim will be denied.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  Here, reasonable jurists would not find the Court's habeas

ruling debatable.  Accordingly, no certificate of appealability shall issue.

V. CONCLUSION

For the foregoing reasons, Reed's petition will be denied with prejudice and no certificate of appealability shall issue.

An appropriate order follows.


Dated: June 2, 2023                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.